ex rel Amir Ali v. Cal State Northridge. Thank you. Morning, Your Honors. My name is Brian Brown. I'm here representing the appellate, Mr. Ali, who is president in court here today. And we are sharing our time this morning with the government. Mr. Steve Frank is here from the Department of Justice, so we've agreed to split our time equally here this morning. I'm sure the panel is familiar with the facts of this case, but I wanted to jump right into what I consider to be the real two critical issues in this case. First and foremost is the Chandler and the Stevens decisions. And as you know, earlier this year, the Supreme Court came down with this Chandler decision, and we asked for a stay in the briefing because we felt that decision was quite important in this instance, because the Chandler court not only reaffirmed that private corporations were persons under the Act, but actually found also that even municipal corporations are liable and are also persons under the Act. That decision resulted in the court vacating the Dunleavy decision, which both the trial court and DMJM, the defendant, had relied upon earlier in trying to seek some type of immunity from a suit under the False Claims Act. I also wanted to make mention of the fact that both Stevens and Chandler did not make a couple of holdings which are urged upon this Court. Number one is that there's no mention in either of those cases that the restricted definition of person to exclude States or State agencies, that that is meant to include in any way an agent of the State. There was also no finding about whether or not States have sovereign immunity under the False Claims Act, although that was briefed in the case. The Court went back on a statutory construction issue rather than making a finding on that. We have certainly pointed out in our briefs that we think that there is no sovereign immunity, and certainly we have disputed that Stevens can be used as a holding to that effect. But it is certainly our position that even assuming that States have sovereign immunity under the False Claims Act, the Court must follow the arm of the State test to somehow branch that immunity over to a private corporation. My reading of the defendants' briefs in this case is that they concede that that test cannot be applied to them, that they don't fall within any of those factors. And I think that is certainly the case. The primary factor is whether or not a judgment against them would be paid for from State funds, and that is clearly the most important factor, and that certainly would not apply in this case. Any judgment would be paid by this private corporation. Could they be, could the firm be an agent of the university without being an arm of the State? I believe so, Your Honor. I think they could. Well, suppose we had a situation where the university authorized them, knew, or at least knew that that was what was the representation that was going to be made, then would that be a situation in which they were agents of the State? It is possibly a situation where they might be agents, but first of all, that's not what happened here. But even if it did, the fact that you might have an agency relationship does not give them some type of immunity, which is where we have to come back to. We have to find some way to provide some exclusion from the False Claims Act's ambit to this private corporation, and I don't believe an agency does that. I think that even still, regardless of whether you find that they were or were not an agent, you still have to meet that five-pronged test to determine whether they are entitled to sovereign immunity, which I think are two separate issues. And, yes, I think you could have an agency relationship, but still not have an arm of the State. And I think many of these cases that deal with an arm of the State are, if you really looked at it, probably situations where they were agents. The Agwan case that we cited, I think if you looked at what the Port Authority, I think it was, was doing there, they probably were an agent of the Commonwealth in that instance. But the Court did not go off in determining whether there was an agency relationship. They were concerned with primarily whether the judgment would be satisfied through State funds, and that's really where they came down on that. If this case were to proceed and there was recovery against DMJM, would there be indemnity by Cal State Northridge? I am not aware of any indemnification. On the agency ground? I'm just wondering. No. I don't believe that there is. And I'm not aware, either contractually or otherwise, that the agent can then seek indemnity from the principal. But I also would point out there's a number of cases that have held that even under the False Claims Act and a number of these 1983 cases, even the fact that the State or some other entity has to reimburse the employee, that still does not qualify as against the State treasuries. All right. You got to what I'm suggesting. Is there a distinction between possible indemnification under other legal theories and the right to enforce a judgment against the State? I don't believe there is because, again, those cases I'm trying to analogize to some 1983 cases like Luder, which I think we've cited, those courts have held that as against an individual officer or State employee, that does not transform that action into an action against the State simply because the State has to indemnify that person. That is just not a dispositive issue. We don't even have that here where there's either a contractual or, I think, an agency obligation to indemnify them. And certainly, that does not transform this into something that would require an arm of the State or sovereign immunity that should apply to this entity in this instance. Well, just I not recognize that the case is strictly hypothetical. But suppose that well-founded employees of Northridge, high up, talked to this firm and said, you know, we really need to have the towers repaired. And so would it be all right if you designate that on the basis of that study that this, we would intend to occupy that? Suppose that actually occurred. Would that not be, would they then not be an agent? And would the Northridge, under the regular agency situation, be the one that would be responsible for paying it if they weren't immune? I don't think so, Your Honor. I think that the False Claims Act is very clear that an individual or a corporation is liable for any submission of a false claim, whether it's in an agency relationship or otherwise. Whether it is directed by, in this case, an immune State agency or not. If DMJM or their employees make that submission, it results in a false claim being submitted and the payment of money, which it did in this instance. Their agency relationship really does not matter, because the False Claims Act, as opposed to some of these 1983 cases where there is a historical immunity that has developed, again, for State officials, not private corporations. That is what the False Claims Act is designed to prevent. And that's exactly what happened here. We are seeking to go after this corporation for their own conduct in submitting these claims. There is no immunity that has been put forth here. They are indicating that sovereign immunity doesn't apply. So I'm not sure what is left. I'm not sure what immunity that they can then point to or that exists that would allow them to be excluded from the ambit of this statute. They cited three cases for that proposition, none of which involve State actors or State agencies. They're all Federal situations, Federal contractors that have either specific statutory immunity or were operating under an act of Congress. So what you're left with at the end of the day is back to the Stevens and Chandler analysis. They are persons under the act, and they need to be held liable for their own actions. If we were to agree with you, the case would go back for a determination as to whether the falsification was intended in knowing and whether, in fact, there was falsification. That's correct, Your Honor. And the intended and knowing could take two forms. In this particular case, it takes the form of reckless disregard. There's two ways you can show knowingly, as that term is defined in the False Claims Act. One is a material misrepresentation. In this case, I think the facts show that this was a reckless disregard situation where they simply made representations to the government without essentially checking those facts in reckless disregard of what those facts were. And so that is really the standard that will ultimately be applied, I think, in this case. If there's any more questions, I'll defer to Mr. Frank for any comments he might have. Thank you. May it please the Court. My name is Steve Frank from the Justice Department, as amicus on behalf of the relator in this case. We are here as amicus to ensure the integrity of the False Claims Act. It's a very important case. Initially, you wouldn't get into this case. Is that right? Well, as Your Honor probably well knows, there are a lot of these kind of cases brought, and they are brought before the government. We do have limited resources. We can't get involved in all of them, and it's no reflection upon the merits of the case or not. However, were the district court's decision to be followed, it would open up a very large loophole virtually eviscerating the False Claims Act, and that's why we wanted to present our views. Because the False Claims Act, as the Stevens Court indicated in its opinion ever since it was enacted in 1863, was designed to go after contractors who were defrauding the government. That's what it's all about. That's who we bring suits against, for the most part, contractors, our own contractors included. If we were to suddenly go off down the road that agents of the State or of the United States, for example, could not be sued under that, there'd be very little left to the Act. The Stevens Court was a very limited decision, and it said that States are not persons under the Act. It went no further than that. There are some difficult questions that lie ahead as to whether or not State employees sued in their individual capacity or other such people could be sued. Those are difficult questions. It's not presented here. This is really, if any case that comes before a court of appeals is an easy case, this is the easier case, which is this is a corporate entity, and both Stevens and Chandler made it very clear that corporations are persons under the Act. And that's where we think this case should begin and end. The other critical question, I think the district court asked the right question, but was veered off into unrelated concepts of the FTCA and Bivens and came up with the wrong answer. The district court did ask the right question, and that is, is this tantamount to a suit against the State? And the answer to that question is simply no. The State is not a party. No State employee is sued in any capacity, official or personal. The only corporate defendant here, the only defendant is the corporate defendant, not even any of its employees. And so the real question, what the Supreme Court did in Chandler and Stevens is it gave deference. It gave deference to the State.   It gave deference to the State as well. It looked at the statutory language of what is a person. That's really it. And it's just the State. This case is an interesting case. And usually the contractor cases are going out to do this for their own benefit. Here, the State wanted this to be done, instigated the letters, asked that they be written. So it was really for benefit to the State and not to the contractors. So perhaps that's what was in the mind of the district court. Perhaps, and I will defer to my colleague on the facts of it, but I think what's important is the issue of who you can sue under the Act. And while you cannot sue the State, the question is, is a private corporation – this is the question – a person under the False Claims Act? And there's no indication that by any court that a private corporation is not. The Stevens case, which set aside and decided that a State, because largely issues of comedy and statutory construction, is not a person, it's not some kind of an umbrella that corporations can use to get – it's not, to use a colloquial expression, it's not a get-out-of-free-card-for-False-Claims-Act defendants to try and come under it under false – I mean, under unrelated concepts involving the FTCA and Bivens. And I'd like to address Judge Wardlow's question. Well, before I do that, I simply want to say that there are two questions. One is, is it tantamount to a suit against the State? And the test to be applied is the arm-of-the-State doctrine, and the critical factor under that is, is there going to be a judgment against the State? And there will be no judgment against the State. That arm-of-the-State doctrine, contrary to counsel's representation, is not limited to 1983 cases. In Alden v. Maine, a Supreme Court case, it was used in a Fair Labor Standards Act case. And it's the test. Is this a suit against the State? And it's not. One thing – I have the same problem as Judge Fletcher does, because the usual situation would be to see a contractor who's building something from the State that's getting Federal money and so forth and submits a false claim as to building something that was not authorized. But here we've got a direct representation of something the State wanted. If an employee had done it, that gets closer. But we have a representation made by an agent, I think, saying that, yeah, the towers are going to be occupied. Well, that sure seems different to me than a situation where a false claim is being filed by a firm that's contracting and not just representing something that the State asked them to do, for example, because, in part, it's to the benefit of the State or the university, not to the benefit of the firm. Yes, Your Honor. And I understand where Your Honor is coming from. I think the critical point is not so much who benefits, not so much, you know, who gave the order. It's who you can sue. And if you're a person – I hate to sound simplistic. If you are a person and an employee is a person, it's the government's position that you can sue a State employee under the False Claims Act. But that's another case. If you're a person and an employee is a person, an agent is a person, a corporation is a person, they are susceptible. Now, the question they may want to raise in defense is that they did not knowingly submit it, that the State told them to do it and they didn't know what they were doing, what have you. That is possible defense that they could raise upon remand. If I might get to Judge Wardlow's question. So wouldn't that mean that we shouldn't – there shouldn't have been a summary judgment? No, Your Honor. All the government is here. As you mentioned, on remand. I guess that's what they're seeking is a remand because the summary judgment was improper.  All the government is here is to reverse the district court's jurisdictional question. And then we think, I guess in due course, it would go back on the factual issues of whether or not they submitted a false claim or not. But this is – we want to stop this really dangerous, slippery slope that we feel it's heading down. Judge Wardlow asked a question about indemnification. And I believe that the answer to that question is that it doesn't, it doesn't really make any difference whether or not someone – third parties have some kind of an agreement about who's going to pay or who's not going to pay. It's almost like the question the Court was pursuing, I believe, in the first case about can you confer jurisdiction on the court. Whether or not they have some kind of an indemnification agreement would be irrelevant. Again, it goes back to whether or not they're a person. And I would direct the Court to the Supreme Court decision in Regents of the University of California v. Doe at 519 U.S. 425, where in that case, the university – it's a slightly different case. I think the principle is the same. The university was going to be reimbursed by the Department of Energy. So they would not be directly liable. And so the question was whether they would lose their sovereign immunity, their Eleventh Amendment sovereign immunity. And the Court, I believe, answered in language, if the Court would look at page 431 of that decision, that even if the fact that they were going to be reimbursed, they still would be legally liable, and therefore, they wouldn't lose their – their sovereign immunity. I think the same principle applies here in the converse, that, you know, even if they are reimbursed, that – that – that doesn't take away their – their legal liability. The point I'm trying to make is that in order for the defendants to get out on jurisdictional grounds, they must be the State, which they are not, or they must be an arm of the State, i.e., the State must be liable in this case, which it's not. And we would urge the Court – this is an extremely important remedial statute in this country, which is construed very broadly. And – and when exceptions are made, like in Stevens, they are very narrow. And I think Chandler underscored this, because Chandler came back and said, okay, a State is out. The State's not a person. Now, you might think, well, that leaves out governmental entities. But then Chandler came back and said, no, no, no. It's very particular here. It's just a State. If you're a municipal corporation, like they were in Chandler, you're – you're a person. And we can conceive of instances, I'm sure the Court can too, where a municipal corporation might be serving, in some cases, as an agent of the State. It doesn't matter. They're a person under the Act, and they are – they're susceptible to suit. If there are no more questions, I appreciate your time. Thank you. Your Honors, may it please the Court, my name is David Shepherd, and I represent the affilee DMJ in Daniel Mann Johnson and Mendenhall. Your Honors, I direct my first point to Judge Hugg and to Judge Fletcher, because I think both of you have seized upon the point that underscores the amicus and the affilee being ships passing in the night. There's no dispute as to whether, on a theoretical basis, a corporation or an individual, as Mr. Frank acknowledges, is a person under the False Claims Act. This is also not a case where DMJM became the principle and therefore the arm of the State. I think if Your Honors read the cases that Mr. Brown breezily described, those are not agency cases. Those are cases where a private entity became the principle. This, Your Honors, is an agency case. It's an agency case that your decision, respectfully I would submit, hinges on a very careful reading of the facts as found by Judge Marshall and the facts as utterly uncontroverted in the declarations that Judge Marshall read in making her ruling. Judge Hugg, you asked a question about whether would this be a different case if this were a case where the State told DMJM what to do. Well, that's exactly, I mean, exactly this case. And just by way of critical factual background, this is a case where DMJM did not come into Cal State Northridge until a year after the earthquake. By that time, a vice president originally sued by the appellant named Bill Chavin had written a letter, and it's in our brief and it's in our excerpt and it bears careful reading, a letter requesting the $20 million that Cal State Northridge received before DMJM was brought on board. Those $20 million were in the fold in 1994 in response to an April 1994 letter that in all relevant particulars mirrors the language of the two pieces of paper at issue in this case in the first amended complaint. In January 1996, the same person, Mr. Chavin, in the presence of FEMA and in the presence of DMJM stated to FEMA just as he had written in a three-page letter that's before the court, there was an intention to reoccupy, no final decision had been made as to how to proceed. Well, that really goes to the issues that would be played out on remand. Isn't that right? Well, I hate to hear Your Honor talk about remand because in our brief we've talked about how this case, whether decided on precisely the basis Judge Marshall decided it on or on alternative bases advanced in our brief, this is a case where the plaintiff has in no way met his burden of entitling himself to a trial. On the agency point, Your Honor, the critical finding is that it's in the summer of 1996 before the memorandum and letter are submitted to FEMA, Cal State Northridge's Vice President, DMJM's Randall Duncan and FEMA's Leland Wilson meet. During that meeting, and again this is not controverted, they didn't take the deposition of Vice President Elbert or FEMA's Leland Wilson, it's uncontroverted, FEMA was told there was no final decision, this report was in the offing, and FEMA's Wilson told Vice President Elbert, in the presence of DMJM's Duncan, that will be fine, submit it. After that, what was done is Vice President Elbert directed the DMJM employees to send that report with a cover memorandum that was identical in relevant particulars to what Mr. Bill Chatham had written in April 1994. So, back to Judge Hugg's question of the appellants, what if this were a case of agency? That's all it is. It is a case of agency. It is a case where the only actions complained of were actions directed by Cal State Northridge, actions condoned by Cal State Northridge, and actions specifically ratified by Cal State Northridge. The Vice President, whose name was signed by DMJM's Duncan, stated, and this is a quote, he wouldn't have changed a word. It was exactly what he believed to be true, and it was what he directed his agents to submit to FEMA. Now, Mr. Shepard, let's assume it's a case of agency. Is there a theory under the False Claims Act by which the agents could have acted recklessly or with some knowledge that perhaps these representations were not precisely accurate to FEMA and could be culpable as well as Cal State? Absolutely. Yes, Your Honor. There is a basis on which a righteous lawsuit could have proceeded. It just wasn't available in this evidence. Here's what such a – and Judge Marshall spoke to that in her opinion. She took the Stevens case. She read this Court's decision in Bly-McGee, and she realized that this case doesn't begin and end on who is a, quote, person under the statute. It only begs the question where a person otherwise susceptible to suit, in this case a private corporation, in Bly-McGee, individual employees of the California Department of Justice, could a False Claims Act be maintained? What the panel held in Bly-McGee was not for official duties, which we believe means duties within the scope of employment or, in this case, agency. But a False Claims Act lawsuit could arise for actions that were not official, in Bly-McGee's words, or actions that were outside the scope of agency. So applied to this case, would the plaintiff be entitled to a lawsuit against DMJM even though he pled that DMJM acted at all times as agent, servant, and representative of Cal State Northridge? Yes. If, in the six and a half years he prosecuted his case and took discovery, if he had been able to present to Your Honors or to Judge Marshall evidence that Rademal and Duncan, the two employees in question, themselves came up with the notion of trying to keep the $20 million that Cal State Northridge's Bill Chatham in 1994 had obtained. If they had come up with the notion of trying to keep that money through sleight of hand or through fraud. But the evidence is absolutely crystal clear that they served in 1996 as mere messengers on these two pieces of paper. They took the pieces of the – a slate had been written in 1994, reiterated by Bill Chatham at a meeting in 96, discussed plainly and unequivocally between Vice President Elbert and Femas Wilson. They took Elbert's direction and served as the messenger to get the word to Cal State Northridge. Another critical point, again, Your Honors, is when you come up for oral argument, you're always looking for something that's not already been written about. It's a fresh idea that comes to you. And I think the United States unwittingly, because as Mr. Frank candidly acknowledged, he doesn't know the facts of the case. He doesn't know what Judge Marshall had before her. He doesn't know what she grounded her ruling in, absolute agency, no conduct that was other than official. But Mr. Frank writes on page 14 of the amicus brief, he accuses D&JM of borrowing Federal Court Claims Act cases from the government contractor defense arena, and then says, those are limited and those have no application here, and basically wonders why should they. But then he critically asks, the reason why they don't really apply is because you look to the rationale behind the rule. And as Mr. Frank wrote, in those defense contractor cases where private corporations derivatively or derive the sovereign immunity of the United States, they derive that because they're simply following specifications from a government contract to them. So Mr. Frank writes, yes, they're merely following precise specifications that they cannot alter or amend, not applicable in an FCA case where it's alleged that the contractor knowingly submitted a false claim to the government. Well, that was the allegation, that D&JM knowingly submitted a false claim, but the proof, which is uncontroverted, absolutely mirrors the hypothetical that Mr. Frank proffers to the Court. All D&JM did was follow the precise specs as written in 1994 by Vice President Chatham, as reiterated in January 1996 by Mr. Chatham, and as specifically directed by Vice President Elbert, and as specifically welcomed by FEMA's Leland Wilson. That is exactly the hypothetical, so there's a complete convergence of the rationale and the rule. I also note, for Your Honors, that ---- that, in fact, they were going to occupy the building, and they had no such intention. Well, again, that was the allegation, and that was the proffered false claim that Cal State Northridge had originally supposedly made, that there was no intention to reoccupy. The evidence in the record, and that's why, if Your Honors turn to the alternative grounds, is, again, uncontroverted. The President of Cal State Northridge stated, we always intended to reoccupy. She stated under oath that no one on the planet was in a better position than she to say whether, at the time of the earthquake, Cal State Northridge intended to reoccupy. It's what Bill Chatham wrote. It's what Art Elbert told D&JM to write. So for purposes of the record before Your Honors, whether Your Honors decided strictly on the agency and derivative immunity question, which I urge you you can and should do under the principles we've cited in our brief and under a common-sense application of Stevens, Bly-McGee, and the other authorities to our precise facts, you can find there was no state of mind, not even negligence, for an agent to follow the direct orders where there was documentary backup, that that was exactly the case. That was exactly what they were told to do. Now, if they knew it was false. If there was proof that they knew it was false, it would be in the record. And there isn't. I mean, Your Honor, respectfully, there's nothing. There's no proof they knew it was false. What Mr. Brown has said is it's a recklessness case. And in his brief, he said, here's what Cal State, here's what D&JM should have done. They knew Art Elbert, the vice president who told them to submit the two pieces of paper, well, they knew he wasn't around at Cal State Northridge in 1993, in early 1994 when the earthquake happened. They needed to call somebody to find out. Leaving aside the potential insubordination from not following the direction of someone who you can probably presume to have good authority for telling you to write letters, especially when you've already told FEMA what's coming and FEMA blesses it, who would you call? Bill Chatham, who has written to FEMA in April of 94 and told them there was an intention to reoccupy these apartments? There are documents in the record that would indicate there was no intention to repair the CTU. Respectfully, Your Honor, if you could tell me what documents... The foundation report that came out two days after the architectural report where they said... The foundation... I'm sorry. Yes. The foundation vote and President Wilson is the only declarant in the record to describe what happened in the vote. We've got the minutes. Pardon? We have the minutes. Your vote was not to combine the restoration of the UTA with the restoration of another building. Under oath, President Wilson was asked, was the Coleman-Kaske report still viable? Answer, yes. No contra declaration, no contra testimony. She was asked, was abandonment an option? Answer, no. But more critically, Your Honors, FEMA's Leland Wilson was advised, and the record supports this, Your Honor, was advised that no final decision had been made and was advised by Vice President Elbert in the presence of Mr. Duncan that this report had not been approved. I mean, it was not approved for funding. It was in the offing. But as President Wilson said, it still had viability. If I can ask... I need to take you back to one of the legal premises of your argument because, frankly, I have the sense that there is confusion between the doctrines of arm of the state for purposes of sovereign immunity and agency theory, and it's confusion that is in the district court's opinion. And I think, though, some of the confusion stems from Bly McGee because Bly McGee talks about states and state agencies, and that word, state agencies, is being taken to mean agents of the state. And you're arguing that it should be interpreted broadly, that it should include people like your client who acted as agents of the state, whereas I think if you read the facts of Bly McGee very carefully, what the case is really addressing are true state agencies. It's talking about the liability of the Office of the State Attorney General. I agree with you, Your Honor. And so it seems to me it does not extend to this context. Well, I mean, obviously, Your Honor, the Court only decided the precise case before it, and Judge Marshall has to apply that to a different scenario. And what I'd urge you to do, I don't think Judge Marshall – I mean, I have to say because there's not a derivative immunity case and because I don't think the sky will I think what Judge Marshall borrowed from that case, the critical point of what was left open in that opinion was the ability to sue individuals because they would remain persons. And what Judge Marshall saw, official capacity. Right. But they were talking about official capacity in the same way that you talk about immunity of the State from lawsuit. You can sue State actors. You're not talking about – she drew that concept of in an official capacity and outside of an official capacity from the whole body of law of State agencies and State actors. Well, I understand, Your Honor. And I think what she did is – and again, you can only judge a case based upon what's been written before, and it's a False Claims Act case where you would ask yourself, does that reasoning apply here, because in order to maintain the False Claims Act suit against Bill and Jane Chatham at Cal State Northridge or Dan Lundgren in the Bly McGee case, there would have to be proof that the actions taken were beyond the reason for the rule. And again, I come back to the reason for the rule. I don't think it turns on, quote, employee, employer. It turns on, I think, rough up the language a bit, the officialness of the duties as applied here. The officialness of the duties were, as Judge Marshall found, for all intents purposes, based on the facts here, they function, they smelled like, they tasted like, they functioned as employees. And so the distinction, we argue, is one without a meaningful difference. I'd ask Your Honors, when you go back and revisit amicus page 14, and you go back to the authorities we cite as to why it makes perfect sense to apply straightforward – in a straightforward way, principles of agency to this case, that you read the Boyle case from the Supreme Court in 1980 – in 1988, and you read the Fourth Circuit's opinion in Butters v. Vance. They're not Federal Court Claims Act cases. The Boyle case was a Supreme Court case that was brought under Virginia law, and it was a wrongful death case. Justice Scalia wrote in that case, and again, you have to ask yourself whether these words have application in this arena, where there's no dispute that the actions were according to specs. They were pure ministerial agency actions. Justice Scalia writes, It makes little sense to insulate the government against financial liability for the judgment that a particular feature of military equipment is necessary when the government produces the equipment itself, but not when it contracts for the production. And the insulation for the corporation with whom it contracts turns upon whether that private corporation is able to derive the immunity of the United States because it follows specs, as opposed to acting on its own initiative, doing something unofficial, doing something outside the scope of the agency. The reason for that rule is the government's too big to do all its business by itself. It has to contract with private corporations. And those private corporations, in the False Claims Act arena, become on the hook where they exceed their agency, where they do actions that are not within the lawful course of their duties. This would be a different case if there was any proof at all that D&JM did anything other than what seemed lawful as told to them by their superiors at Cal State Northridge, as listened to, invited, and ratified by FEMA's Wilson. But Butters against Vance is even more to the point. That's a case where it's foreign sovereign immunity, and a foreign government contracts with a company called Vance International to help run its show in the United States. And a gender discrimination suit is brought against that private corporation. The Fourth Circuit, again, applying common law agency to the precise facts before it, writes, Imposing liability on private agents of the government would directly impede the significant government interest in the completion of the work. As a result, courts have extended derivative immunity to private contractors, particularly in light of the government's unquestioned need to delegate governmental functions. That's not an arm-of-the-case analysis, arm-of-the-state analysis. It's an agency analysis, and Vance International in that case would have been susceptible to that gender discrimination suit had the proofs supported that it, rather than its master or principle, that it had occasioned the wrongful termination in that case. But the proofs that were before the Court in deciding the case were that, no, the action at play was strictly the action of the sovereign principle, as in the Boyle case, as in this case. And so, Your Honors, Bly McGee clearly stops short of specifically addressing an application to this case because it wasn't a case of private corporation. But it was a case, and Your Honors write upon a slate where it is the case, that be they United States sovereigns or a State sovereign, immune, whether it be False Claims Act, Federal Tort Claims Act, immune from prosecution, are their agents also immune, as in Bly McGee, where the persons in F.C. Federal False Claims Act parlance were individuals, or here, where the agent is a private corporation, it all turns on whether the agent went beyond specs. If I could use my region and went beyond the agency. Kagan, I see you are well over time. I am. If I could wrap up by returning to the remand point, I would urge Your Honors to rejudge Marshall's opinion carefully. It is an agency case where she was looking for any reason in the record at all to find DMJ and libel for its own actions, for its own initiative in perpetrating a supposed fraud. It couldn't find any basis in this record. There wasn't a fraud. There wasn't a state of mind. And Your Honors will be able and confident to apply the common law of agency found in Boyle and Butters v. Vance to these facts and affirm Judge Marshall's ruling. Thank you. All right. Thank you. We allowed Mr. Shepard to go over a couple of minutes, so I'll give you a couple of minutes to rebut. Thank you, Your Honors. I won't spend a whole lot of time. I wanted to address the comment that Fletcher had made. First of all, Mr. Shepard spent a lot of time on the facts. I think you're absolutely correct. Most of what he had to say is going to have to be dealt with on remand. This is a fact-intensive case, but most of those things are going to have to be dealt with in front of a jury or if this motion for summary judgment is revisited on its facts and on its merits. Just as an example, Mr. Shepard was mentioning whether FEMA knew about this report and had some kind of knowledge that would negate or give them a defense. That's a government defense that is available that is not involved here and is a factual issue that would have to be determined at a later time. In fact, that's not the case at all that Mr. Redemont, when he wrote this, was regurgitating things that was told to him by CSUN. He created those himself. What would be his – I mean, this is a – both Judges Hagan and Fletcher have asked a similar question. How did DMJM stand to gain, if at all, by providing a false statement or being reckless in what it provided to the government? First of all, if I can go to a different issue real quick. There's not required to be – No, I really am told by this because you're – we're looking at a situation where perhaps if there was a false statement made, it was by and CSUN, for the benefit of CSUN, maybe through these individuals. Correct. And yet they're the ones who could be sued and they're the ones who could be held liable, and there just seems to be an inherent unfairness in this situation. I understand. Unless there's something, some motive in their part. I mean, would they get paid more if they actually built the tower as well? Well, again, first of all, they're not required to have a direct benefit, and we cited those cases. I know that. I know that. But what's the motivation? The motivation is, as I understood it, approximately $15 million that they were gaining from the contract that they had as operating as the construction management firm for CSUN. They had an incentive to help their client, who they were under contract with, to make sure that they could maximize the federal monies that they were getting. So they had millions of dollars of incentive to make sure that the customer was satisfied with them, and that the customer in this instance, because that's what these two gentlemen were doing, got the most federal funding that they could. So while DMJM didn't get the $20 million, they certainly assisted in CSUN getting the money, and they benefited by the, as I said, millions of dollars over the years that they were operating as a construction management firm. So I understand what you're saying about unfairness, but they did benefit indirectly because they have a financial incentive to make the client happy. And them maximizing federal funds, in this case wrongly, is certainly a benefit that they wanted the client to have because it benefited them as well. All right. Thank you, counsel. Thank you. Thank you. So, Exel Amir Ali versus Cal State University-Northridge, et al., is submitted. And we will take a U.S. versus Medina.
judges: Hug, Farris, Wardlaw